[J-47-2025] [MO: Donohue, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| KRISTIN ALLYN WEATHERHOLTZ, | : | No. 57 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court at No. 190 MDA |
| | : | 2023 dated October 25, 2023, |
| v. | : | Reversing the order of the Lebanon |
| | : | County Court of Common Pleas, |
| | : | Civil Division, at No. 2018-40012 |
| DYLAN JACOB MCKELVEY, | : | dated January 17, 2023. |
| | : | |
| Appellee | : | ARGUED:  May 30, 2025 |

## CONCURRING AND DISSENTING OPINION

**JUSTICE DOUGHERTY**                    **DECIDED:  December 16, 2025**

In *K.N.B. v. M.D.*, 259 A.3d 341 (Pa. 2021), this Court held a plaintiff seeking a protective order under the Protection of Victims of Sexual Violence or Intimidation Act ("the Act") is "subject to [42 Pa.C.S. §5527(b)'s] six-year catch-all statute of limitations." *Id*. at 352.  Because the majority today effectively nullifies this holding, and its decision ignores the facts of this case and raises serious constitutional concerns, I respectfully dissent in part.

To obtain a protection order under the Act, a plaintiff must:

(1) assert that the plaintiff or another individual, as appropriate, is a victim of sexual violence or intimidation committed by the defendant; and

(2) prove by preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant.

42 Pa.C.S. §62A06(a).  The issue we agreed to consider in this case, as phrased by appellant, is whether the six-year statute of limitations we recognized in *K.N.B.* "begins to run from the date of the act of sexual violence" or intimidation asserted — *i.e.,* the first

prong of the statute — or "from the date of the act or circumstance that demonstrated a continued risk of harm to the victim?" *Weatherholtz v. McKelvey*, 323 A.3d 585, 586 (Pa. 2024) (*per curiam*). The majority picks the latter, holding the statute "begins to run from the date of the act or circumstance that demonstrates that a plaintiff, or appropriate individual, is at a continued risk of harm from the defendant[.]" Majority Opinion at 22. According to the majority, "it is apparent that th[is] element is independent from the injury inflicted by the defendant." *Id*.; *see id*. at 21 ("the continued risk of harm element is separate and distinct from the underlying act of sexual violence and intimidation"). Respectfully, this is not apparent at all, at least not under these facts.

Under the second prong of the statute, a plaintiff must prove, by a preponderance of the evidence, that he or she "is at a **continued risk** of harm from the defendant." 42 Pa.C.S. §62A06(a)(2) (emphasis added). "Continued risk" is the key phrase in the statute, and its inclusion by the General Assembly raises the question: continued risk **from what**? Plainly, it means a continued risk of harm flowing from the underlying instance of sexual assault or intimidation asserted by the plaintiff.[1] Importantly, however, and contrary to the majority's interpretation, the occurrence of some "act or circumstance" post-dating the underlying act of sexual violence or intimidation asserted is not required to prove a continued risk of harm. Majority Opinion at 22. The statute uses none of those words; as a textual matter, it simply does not require a separate, later occurrence of an

---

[1] Because the statute clearly includes this second element, I cannot subscribe to the panel's view below "that the statute of limitations is premised upon the first prong of §62A06(a), *i.e.*, the cause of action accrues on the date the petitioner became a victim of sexual violence or intimidation[.]" *Weatherholtz v. McKelvey*, 305 A.3d 103, 109 (Pa. Super. 2023). Instead, I agree with the majority that "a plaintiff has no basis for relief under the Act until the plaintiff is able to prove that he or she is at a continued risk of harm from the defendant." Majority Opinion at 22. Where I part ways with the majority is in its conclusion appellant could not have proven this element sooner.

"act or circumstance that demonstrates that a plaintiff . . . is at a continued risk of harm[.]" *Id*.

The majority seems to recognize this dilemma. Despite declaring on one hand that "the occurrence of sexual violence or intimidation, by itself, does not give rise to relief under the Act[,]" on the other it admits that "in certain circumstances the continued risk of harm may arise on the same day of the act of sexual violence or intimidation[.]" *Id*. This raises another question: what circumstances? The majority does not tell us. All we know is that the majority apparently does not believe this is one of them. In the majority's view, appellant's action did not accrue — and, thus, the six-year statute of limitations did not begin to run — until she experienced "fear and anxiety" upon seeing appellee at a flea market more than a decade after the underlying incident of sexual violence. *Id*. at 21. This reasoning suggests appellant was neither fearful nor anxious about the possibility of running into appellee prior to that date. Common sense suggests otherwise. Regrettably, most (if not all) victims of sexual violence or intimidation live in a perpetual state of fear and anxiety from the moment an underlying act of sexual violence or intimidation occurs. The fact such conditions are naturally worsened if the victim later encounters or observes a defendant does not mean, however, that the injury had not been inflicted or the action had not accrued until that moment.

This case proves the point. As the majority recounts, appellant specifically testified that "[a]fter the encounter at the flea market, . . . she 'definitely had **more** fear and anxiety[.]'" *Id*. at 5, *quoting* N.T. Hearing, 1/13/23, at 12 (emphasis added); *see id*. at 21 (noting appellant's "encounter with [appellee] at the flea market in 2022" merely "**increased** her fear and anxiety") (emphasis added); Trial Court Op., 3/31/23, at 3 ("This new contact brought up a **new wave** of anxiety and fear **such as she had experienced previously**.") (emphasis added); *id*. ("her fear and anxiety **worsened**") (emphasis

added); *id*. at 9 ("In this case, [appellant] testified that she experienced **a heightened level** of anxiety and fear after" the flea market encounter) (emphasis added). Appellant's candid admission she was already fearful and anxious prior to the flea market incident unequivocally demonstrates she could have "prove[n] by [a] preponderance of the evidence that" she was "at a continued risk of harm from the defendant" even before that date. 42 Pa.C.S. §62A06(a)(2); *see* Majority Opinion at 20 ("the *K.N.B.* Court explained that the continued risk of harm element can be satisfied based on the victim's subjective fear alone"). Thus, appellant's cause of action did not accrue on June 6, 2022; it accrued before then. *See Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 251 (Pa. 2021) ("In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion.") (internal quotations and citation omitted).

Put simply, if, as the majority concedes, there are some circumstances where "the continued risk of harm may arise on the same day of the act of sexual violence or intimidation[,]" Majority Opinion at 22, then surely this type of situation, where the continued risk of harm is based on nothing other than the victim's subjective fears — fears the victim admitted pre-dated the incident in question — must be one of them.[2]

The majority's contrary holding all-but eviscerates the six-year statute of limitations we recognized in *K.N.B.* True, it technically remains: even under the majority's holding,

---

[2] The majority claims it "do[es] not hold that the Act **requires** a plaintiff to prove a separate act or circumstance following the underlying sexual violence or intimidation to satisfy the continued risk of harm element." Majority Opinion at 23 (emphasis in original); *see id*. (asserting this "is a distinct legal question that is not presented in this case" as the only "issue before the Court asks whether the 'statute of limitations . . . begins to run . . . from the date of the act or circumstance that demonstrated a continued risk of harm to the victim?'") (citation omitted); *id*. ("Because the trial court found that '[appellee's] conduct on June 6, 2022 subjected [appellant] to a continued risk of harm[,]' and we have not been asked to review this separate determination, we proceed as though this is the point at which [appellant] was 'at a continued risk of harm from [appellee].'") (internal citations omitted). Respectfully, it is hard to reconcile this statement with the majority's holding, especially in light of appellant's pointed testimony, as described above.

appellant would have only six years from the date of the incident at the flea market to seek a protective order based on the increased fear and anxiety she felt that day. But in practice, this is no limit at all. This is because appellant would be solely empowered to restart the clock at any given moment, for the rest of time, by simply invoking the same fears and emotions — even if appellee has done nothing new whatsoever. What purpose does a statute of limitations serve when the plaintiff is in complete, subjective control of deciding when and how often it runs? The majority's decision today makes our prior decision in *K.N.B.* meaningless as a practical matter.

More troubling, the majority's decision, when coupled with our holding in *K.N.B.* that "a plaintiff's fear of encountering the defendant" need not be objectively reasonable, 259 A.3d at 351, raises serious questions about the constitutional viability of the Act.[3] In *K.N.B.*, then-Justice Saylor authored a concurring opinion expressing "substantial doubts about whether [the Act] requires a process that can withstand constitutional scrutiny." *Id*. at 355 (Saylor, J., concurring). He explained:

> A reasonable argument can be made that allowing the imposition of such consequences upon a defendant absent proof of some actual misconduct fails to comport with the fundamental fairness required of all government actions. That a mere assertion, without proof, of criminality is sufficient under paragraph (a)(1) also runs counter to the general precept that the party asserting the affirmative of a particular issue bears the initial burden of proof.
>
> . . .

---

[3] Appellee additionally raises a legitimate question about retroactivity, which might also implicate *ex post facto* principles. *See* 1 Pa.C.S. §1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."). However, I am constrained to agree with the majority he waived any such claims in this case. *See* Majority Opinion at 25 n.17 ("declin[ing] to address [appellee's] argument that the Act, passed in 2015, cannot be retroactively applied to the underlying acts of sexual violence occurring prior to 2015" because he "failed to raise this issue below and did not file a cross-petition for allowance of appeal seeking review in this Court").

> [I]t remains an open question whether an order can issue, consistent with due process norms, based upon a mere assertion of criminality combined with proof of harm, where the harm is assessed on a subjective basis.

*Id*. at 355-56 (internal citations and quotations omitted).

In my view, the majority's holding here exacerbates these concerns. Again, sexual violence is among the most serious crimes in this Commonwealth precisely because of the enduring, life-long trauma it imposes on its victims. If, as this Court held in *K.N.B.*, a plaintiff may establish a continued risk of harm through subjective fear alone, it follows under today's holding that a plaintiff may bring a successful claim for the rest of his or her life, as many times as he or she wishes. *See* Appellee's Brief at 13 ("Under [a]ppellant's approach, . . . [a] victim of an act that occurred multiple decades ago could have a sudden memory of a person who harmed him or her, regardless of whether that person was ever charged, and obtain a protection order [ ] merely by presenting testimony from, for example, a psychiatrist who posits that the plaintiff is suffering from ongoing mental harm."). Thus, this Court has created a situation whereby plaintiffs may successfully obtain an order against a defendant (1) without any proof of sexual violence or intimidation (2) without an intentional act by the defendant (3) without a reasonableness inquiry as to the plaintiff's fear (4) *ad infinitum*. Though I have the utmost sympathy for victims of sexual abuse, and I joined the Court's decision in *K.N.B.*, I strain to see how the Act can pass constitutional muster in light of today's pronouncement.

As appellee argues, the issuance of an order under the Act "entail[s] more than mere annoyance or inconvenience for a defendant." *Id.* "In this case," for example, "[appellee]'s freedom was taken from him and he was incarcerated." *Id.*; *see K.N.B.*, 259 A.3d at 354 (Saylor, J., concurring) ("even an unintentional violation of an order, such as could occur from being in the vicinity of the plaintiff by chance, can give rise to the possibility of arrest and confinement for up to six months, as well as a fine"), *citing, e.g.*, 42 Pa.C.S. §§62A12-62A14. Additionally, "[d]efendants subject to a protection order may

lose their right to own firearms, their employment, their freedom to attend their long-time place of worship, et cetera." Appellee's Brief at 13; *see* 42 Pa.C.S. §62A07(b)(1) (providing that an order or a consent agreement may include "[p]rohibiting the defendant from having any contact with the victim, including, but not limited to, restraining the defendant from entering the victim's residence, place of employment, business or school"). Clearly, the stakes for a defendant subject to an order under the Act are high. Not only does the Act impose restraints on a defendant's constitutional rights to free movement, reputation, and contact with others (including speech), he may also be incarcerated, as appellee was in this case. "These types of difficulties should not be lightly dismissed." *K.N.B.*, 259 A.3d at 354 (Saylor, J., concurring).

Because the record does not support the majority's conclusion appellant's cause of action first accrued on June 6, 2022, and its decision undermines our holding in *K.N.B.* and potentially jeopardizes the constitutionality of the Act, I respectfully dissent in part.